# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MODE TRANSPORTATION, LLC, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. _____ |
| AMANDA WILEY, | § § § | |
| Defendant. | § § § | |

## PLAINTIFF MODE TRANSPORTATION LLC'S ORIGINAL COMPLAINT

Plaintiff MODE Transportation, LLC ("**Plaintiff**" or "**MODE**") files this Original Complaint against Defendant Amanda Wiley ("**Wiley**"), and respectfully alleges and shows the Court as follows:

## I. INTRODUCTION

This case is brought to stop ongoing and egregious misconduct that—if left unchecked—will irreparably harm MODE. Wiley, a former MODE employee, is currently using MODE's confidential and proprietary information ("**Confidential Information**") to syphon business to her new employer, Lily Transportation Corp. ("**Lily**")—a direct MODE competitor. Wiley's actions constitute trade secret theft. But Wiley's misdeeds do not stop there. MODE has recently discovered compelling evidence that Wiley began this nefarious activity *during her employment* with MODE—conduct that constitutes a breach of her fiduciary duty and duty of loyalty to MODE under Massachusetts law. Wiley's conduct must be stopped.

MODE is a third party logistics business that provides transportation logistics services to customers with complex shipping needs. MODE offers its customers a wide-range of

transportation services through a single provider, including: intermodal, air, and ocean services, freight forwarding, supply chain management services, full and less-than truckloads, parcel, and other transportation services. During her employment with MODE, Wiley served as an account manager and leveraged MODE's buying power, large network of industry connections (including carrier and overseas consolidation partner relationships/contracts), operating systems, financial services—including credit processing, collections, and vendor payments—and other back office sales, marketing and solutions support (i.e. analytics, market intelligence, reporting, branding, etc.), to secure orders from shippers of various products.

MODE has recently obtained evidence documenting Wiley's unlawful actions. Indeed, much of Wiley's wrongdoing occurred over MODE's *own email system*; which Wiley was supposed to use exclusively for the benefit of MODE and its customers in the performance of her duties. For example, Wiley sent numerous emails to herself and Lily containing troves of MODE's confidential information. Notably, Wiley did this from her personal Gmail account. The purpose of these communications was straightforward—to substantially increase her business portfolio and curry favor with Lily. But the information shared was MODE's, and included highly-sensitive MODE data regarding customers, shipping lanes, delivery loads, volumes, and pricing—all of which constitutes MODE's confidential information.

After discovering this misconduct, MODE quickly contacted Wiley and demanded she

cease and desist. But Wiley has simply ignored MODE and refused to engage in good-faith efforts to right these wrongs and avoid litigation. Accordingly, this lawsuit is necessary to stop to Wiley's unlawful conduct.

## II. PARTIES, JURISDICTION, AND VENUE

1. Plaintiff MODE is a Delaware limited liability company with its principal place of business at 11000 Frisco Street, Suite 100, Frisco, TX 75033, and is authorized to do business in the State of Massachusetts. In addition, MODE maintains an office in Acton, Massachusetts in the ordinary course of business. MODE's sole member is MODE Global, LLC ("**MODE Global**"), a Delaware limited liability company with its principal office in Jacksonville, Florida.

2. Defendant Wiley is a natural person who, on information and belief, resides in Massachusetts and may be served at 43 Hingham Road, North Grafton, Massachusetts 01536.

3. This Court has personal jurisdiction over Defendant Wiley because she is a resident of Massachusetts. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. Complete diversity of citizenship exists between Plaintiff, MODE, a citizen of Texas, and Defendant, a citizen of Massachusetts. Further, as stated above, MODE's sole member, MODE Global, is a Delaware limited liability company whose principal office is located in Jacksonville, Florida. This Court also has federal question jurisdiction under 28 U.S.C. § 1331 for federal trade-secret misappropriation claims brought under 18 U.S.C. § 1836. The Court also has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367 because the state law claims are so related to those claims for which this Court has original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Additionally, the amount in controversy, exclusive of interest and costs, exceeds $75,000.

4. Venue is proper in Massachusetts because a substantial portion of the events giving rise to this lawsuit occurred in Massachusetts.

5. By reason of the foregoing, the Court has jurisdiction and venue over this action.

## III. CLAIM FOR RELIEF

6. At this time, MODE seeks monetary relief over $250,000, as well as attorneys' fees and costs.

## IV. FACTUAL BACKGROUND

**A.  Nature of MODE's Business Operations.**

7. Plaintiff MODE is a third-party logistics business that provides transportation logistics services to customers with complex shipping needs. MODE provides its clients with a wide-range of transportation options through a single provider, including intermodal, air and ocean services, freight forwarding, supply chain management services, full and less-than truckloads, parcel, and other transportation services.

8. Customers retain MODE to find the optimal method of transportation to handle outbound and inbound shipping. MODE then 'goes to market' through the use of sales agents as well as employees such as Wiley. During her employment with MODE, Wiley leveraged MODE's buying power, large network of industry connections (including carrier and overseas consolidation partner relationships/contracts), operating systems, financial services—including credit processing, collections, and vendor payments—and other back office sales, marketing and solutions support (*i.e.* analytics, market intelligence, reporting, branding, etc.).

9. In the ordinary course of business, Plaintiff MODE has developed, uses, and maintains a variety of confidential and proprietary information and trade secrets that derives independent economic value, actual or potential, from not being generally known, including MODE's Transportation Management System ("**TMS**") database, pricing information, carrier and customer lists including the identities of contact persons and contact information, load data, lane information, customer payment terms and outstanding balances, credit limits, customer purchasing

and transaction history, shipper contracts, carrier contact information, carrier payment history, and carrier load history (collectively, "**MODE Confidential Information**"). In addition, MODE has expended substantial time, effort, resources, and money into developing its customer relationships and goodwill, all of which employees such as Wiley benefit from substantially.

**B.    Wiley's Employment with MODE.**

10.    On or about July 13, 2021, Wiley began her employment with MODE.

11.    During her employment with MODE, she was entrusted with MODE's Confidential Information. Indeed, Wiley had access to MODE's Confidential Information that was of immense value, and to which Wiley would have access as a MODE employee. Under Massachusetts law, Wiley was obligated not use or disclose MODE's Confidential Information for any purpose other than in furtherance of MODE's business.

**C.    Wiley Misappropriates MODE's Confidential Information During Her Employment & Immediately After Resigning from MODE.**

12.    On or about September 5, 2022, Wiley announced her resignation from MODE effective September 16, 2022. She informed her immediate supervisor, Ryan Corcoran, that she was leaving the third party logistics industry altogether. That statement was false.

13.    Wiley's true intentions were far more nefarious. Upon information and belief, Wiley told several co-workers that she planned to join a competitor, Lily. Wiley also advised MODE employees that Lily was hiring and claimed Lily's commission structure was more favorable.

14.    After a preliminary investigation of Wiley's e-mail traffic, MODE discovered that Wiley had misappropriated *many* pieces of MODE Confidential Information. As early as August 2022, Wiley e-mailed her own Gmail account (███████████) with numerous

attachments that contained MODE Confidential Information. Among other things, Wiley's emails to her personal account included:

(a) MODE's pricing information;

(b) customer identities and contact information;

(c) communications with customers;

(d) payment information and invoices;

(e) lane data (which indicates where goods are shipped to and from);

(f) load data (which indicates the type and quantity of good being shipped); and

(g) carrier information.



15. All of the categories noted above constitute "information which is used in one's business and which gives him opportunity to obtain advantage over competitors who do not know or use it . . . [such as a] list of customers" and falls within the express definition of a trade secret under Massachusetts law.

16. But Wiley's misconduct did not there. Indeed, once Wiley began working for Lily she also unlawfully solicited *multiple* MODE customers in an effort to cash in on her trade secret misappropriation:



17. Wiley may have gotten away with it had the e-mail not been forwarded to her MODE e-mail. Notably, the e-mail traffic from Wiley's MODE account evidences a pattern of misconduct: first, Wiley solicits MODE customers to do business with her new employer, Lily, using MODE's Confidential Information. Wiley connects the customer to her new employer, Lily.

She then drops off e-mail communications to avoid any appearance of impropriety, only to reappear later in e-mail chains if something is needed.[1]

19. The evidence also indicates Wiley was servicing shipments for Lily *during* her MODE employment. Indeed, Lily serviced and completed shipments for MODE customers that began while Wiley was still a MODE employee.[2] And, during that time, Wiley almost certainly communicated with these customers using her personal Gmail account. This conduct plainly constitutes breaches of Wiley's fiduciary duty and duty of loyalty to MODE.

19. Notably, Wiley's violations of federal and Massachusetts law have already resulted in two MODE customers ceasing their business with MODE.

**D. Both Wiley and Lily Ignore MODE's Cease & Desist Letters.**

20. On October 5, 2022, MODE sent cease and desist letters to both Wiley and Lily articulating Wiley's improper disclosure of MODE's Confidential Information.[3] Neither Wiley nor Lily ever responded to these communications.

21. Wiley violated MODE's rights in its Confidential Information and MODE has grave concerns that, if left unchecked, Wiley's unlawful conduct will continue and expand. This must be stopped.

22. Wiley must cease unlawfully using, transferring, disclosing, or possessing MODE's Confidential Information. Further, this Court must prevent Wiley from using MODE's Confidential Information to unlawfully compete against in the marketplace and hold Wiley

---

[1] *See* Appendix at 1-13.

[2] *See* Appendix at 1-13.

[3] *See* Appendix at 14-29.

accountable for breaching her obligations and competing against MODE during her employment. It is regrettable that Court intervention is required to secure such basic legal obligations.

## V. CAUSES OF ACTION

### Count I—Violation of the Defend Trade Secrets Act

23. Plaintiff MODE realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

24. MODE owns certain trade secrets in its business, including without limitation TMS database, database, pricing information, carrier and customer lists including the identities of contact persons and contact information, load data, lane information, customer payment terms and outstanding balances, credit limits, customer purchasing and transaction history, shipper contracts, carrier contact information, carrier payment history, and carrier load history. This information has been compiled and/or developed by MODE over many years and at great expense to MODE.

25. MODE took reasonable measures under the circumstances to keep this information secret, and derived independent economic value, actual or potential, from the information not being generally known to, or readily ascertainable through proper means by, others who could obtain economic value from the use of such information. Accordingly, this information provides MODE with a competitive advantage in the shipping and logistics marketplace, and constitutes legally-protectable trade secrets under state and federal law.

26. MODE confidentially disclosed these and other trade secrets to Defendant Wiley as part of a business transaction in which MODE expected to profit and which furthered MODE's economic interests. Wiley—an authorized recipient of MODE's trade secret information—knew

or should have known that the information was a trade secret and that the disclosure was made to it in confidence.

27.     Wiley willfully and maliciously misappropriated MODE's trade secrets by using and/or disclosing MODE's trade secrets without MODE's express or implied consent, and after first acquiring access to MODE's trade secrets under circumstances giving rise to a duty to maintain their secrecy or limit their use. Wiley therefore owed, and continues to owe, MODE a duty to maintain the secrecy of MODE's proprietary information. When Wiley took and utilized MODE's confidential and proprietary information for her own purposes, she breached her duties to MODE and misappropriated MODE's trade secrets.

28.     More particularly, Wiley has unlawfully taken possession of certain of MODE's trade secrets and, on information and belief, is using those trade secrets for her own purposes, in furtherance of her own independent business operations, and/or business operations with Lily. These trade secrets include, without limitation, database, pricing information, carrier and customer lists including the identities of contact persons and contact information, load data, lane information, customer payment terms and outstanding balances, credit limits, customer purchasing and transaction history, shipper contracts, carrier contact information, carrier payment history, and carrier load history, which as described above, Wiley has forwarded to non-MODE accounts.

29.     As a result of Wiley's willful and malicious misappropriation of MODE's trade secrets, MODE is entitled to recover its actual damages suffered as a result of the misappropriation including its lost profits, the development costs Wiley avoided by the misappropriation, or the profits Wiley has earned or will earn from her misappropriation under the Defend Trade Secrets Act, 18 U.S.C. § 1836, for which MODE now sues.

30. MODE also seeks its reasonable and necessary attorneys' fees on the basis that Wiley's misappropriation of MODE's trade secrets was willful and malicious.

### Count II—Violation of the Massachusetts Uniform Trade Secrets Act

31. Plaintiff MODE realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

32. As set forth above, Plaintiff MODE's Confidential Information that was taken and used by the Defendant Wiley constitutes trade secrets under Massachusetts law.

33. As noted above, MODE's Confidential Information has been compiled and/or developed by MODE over many years and at great expense to MODE. This information is kept confidential and safeguarded by MODE, and is not readily ascertainable and/or cannot be obtained readily and by proper means by third parties from outside sources. The MODE Confidential Information is extremely valuable to MODE and provides MODE with a competitive advantage in the marketplace.

34. MODE provided its Confidential Information to Wiley under the protections of Massachusetts law which expressly prohibits Wiley from using or disclosing any of MODE's trade secrets and Confidential Information for any purpose inconsistent with Wiley's role and duties as a MODE employee. Defendant Wiley therefore owed, and continues to owe, MODE a duty to maintain the secrecy of such information.

35. When Defendant Wiley took, utilized, and distributed MODE's Confidential Information to Lily, it did so in breach of its legal duties to MODE, and in violation of Massachusetts law.

36. For these reasons, Wiley has violated and continues to violate the Massachusetts Uniform Trade Secrets Act ("**MUTSA**"), Mass. Gen. Laws c. 93, § 42 *et seq*. Wiley's prior,

current, and continued/threatened unlawful misappropriation of MODE's Confidential Information and trade secrets is wrongful, and the utilization of such information entitles MODE to monetary damages.

37. Defendant's willful, malicious, and unlawful disclosure and use of MODE's Confidential Information has directly and proximately caused, and continues to directly and proximately cause, substantial harm to Plaintiff MODE. Defendant Wiley has been unjustly enriched as a result of her wrongful conduct.

38. MODE has been and will continue to be damaged by Defendant's misappropriation of its trade secrets and has suffered actual, incidental, and consequential damages and injury that cannot be measured by any certain pecuniary standard. Because Defendant's misappropriation of MODE's trade secrets is and was willful and malicious, MODE is also entitled to exemplary damages in addition to all actual damages and equitable relief. MODE is further entitled to recover its reasonable and necessary attorneys' fees. MODE also seeks to recover pre-and-post judgment interest and court costs from Defendant.

## Count III—Breach of Duty of Fiduciary Duty and Duty of Loyalty

39. Plaintiff MODE realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

40. Upon information and belief, and as described above, Wiley began competing against MODE and in favor of Lily *before* her employment with MODE ended.

41. Massachusetts law allows for common law claims of both breach of fiduciary duty and breach of loyalty where an employee such as Wiley, who held a position of trust and confidence with MODE, begins to compete with a competitor *during* her employment. *See Chelsea Indus., Inc. v. Gaffney*, 389 Mass. 1, 11 (1983).

42. Under Massachusetts law, Defendant's conduct entitles MODE to recover the compensation paid to Wiley while she was employed with MODE. *Id.*

## Request for a Jury Trial

43. MODE requests a trial by jury.

## Relief Requested As To All Counts

For the reasons set forth herein, MODE respectfully requests that this Court:

a. Award MODE all actual, compensatory, and special damages as set forth above;

b. Award MODE its reasonable and necessary attorneys' fees;

c. Award MODE its costs of court;

d. Award MODE all pre-and-post judgment interest at the highest amount allowed by law; and

e. Order any and all such further relief that MODE may show itself to be justly entitled, whether at law or in equity.

Dated: November 15, 2022                    RESPECTFULLY SUBMITTED,


By:  /s/ *Stephen E. Fox*
    Stephen E. Fox (*Pro Hac Vice* pending)
    Texas Bar No. 07337260
    sfox@sheppardmullin.com
    Jonathan E. Clark (*Pro Hac Vice* pending)
    Texas Bar No. 24069515
    jclark@sheppardmullin.com
    Dan Syed (*Pro Hac Vice* pending)
    Texas Bar No. 24098493
    dsyed@sheppardmullin.com

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
2200 Ross Avenue, Suite 2000
Dallas, Texas 75201
Telephone: 469.391.7400
Attorneys for MODE

By: */s/ Jeffrey A. Dretler*
    Jeffrey A. Dretler (BBO No. 558953)
    jdretler@rubinrudman.com

RUBIN AND RUDMAN LLP
53 State Street
Boston, Massachusetts 02109
Telephone: 617.330.7078
Facsimile: 617.330.7550
Attorneys for MODE